UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:02-CR-20 |
| ) | |
| MACQUILLIE WOODARD, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the court is Defendant Macquillie Woodard's ("Woodard's") Motion pursuant to 28 U.S.C. §2255 to "Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed on June 7, 2007 along with a fifty-five page memorandum in support of his motion. The Government responded on September 7, 2007 to which Woodard replied on December 3, 2007. For the following reason, Woodard's petition will be DENIED.

**Background**

On January 23, 2002, a federal grand jury returned a single count indictment against Woodard charging him with a violation of 21 U.S.C. §841(a)(1), possession of cocaine base, "crack" with intent to distribute. The indictment further alleged that the amount of the crack cocaine at issue was more than five (5) grams but less than fifty (50) grams. On April 15, 2003, a jury found Woodard guilty of possession with intent to distribute as charged in the indictment but concluded that the amount of the crack cocaine was less than five grams. Woodard did not challenge his conviction on appeal, only his sentence. The Seventh Circuit affirmed his sentence on September 19, 2005.

Throughout the course of Woodard's case and on appeal, Woodard had four attorneys appointed on his behalf, all of whom he now contends provided ineffective assistance relating to various aspects of his case. Attorney Thomas O'Malley ("O'Malley") was initially appointed as Woodard's trial counsel. While represented by O'Malley, Woodard filed several *pro se* motions, all of which were denied by the undersigned. Subsequently, Woodard filed a request for appointment of new counsel. The undersigned granted this request and appointed Attorney Donald Swanson ("Swanson") to represent Woodard. Swanson, in turn, filed a motion to suppress the narcotics found at the scene of the arrest asserting that they were the product of an illegal search and seizure. After an evidentiary hearing, the motion to suppress was denied [DE 50]. Throughout Swanson's representation, Woodard continued to submit pre-trial *pro se* letters to the court. See [DE 41, 54]. Woodard eventually proceeded to trial and Swanson employed a defense strategy wherein Woodard admitted possession of less than 5 grams of crack cocaine but he argued that Woodard's intent was not to distribute the crack cocaine but to use it himself.[1] The jury disagreed and Woodard was convicted of possession of less than 5 grams of crack cocaine with intent to distribute. The undersigned set the cause for sentencing.

At the first of several sentencing hearings, Swanson raised a number of sentencing issues for the court's consideration. [DE 64]. Prior to receiving a ruling on the sentencing issues, Woodard filed another *pro se* letter wherein he sought to discharge Swanson [DE 68] and Swanson, in turn, filed a motion to withdraw his appearance on Woodard's behalf. After a hearing, Swanson's motion

---

[1]See Trial Tr. at 130-131: "Let's not snare the addicts ...what about the issue of intent, that the government, the prosecutor here has asked you to consider?  Intent.  The evidence in this case shows that Macquillie Woodard intended to smoke crack cocaine, which is what we admitted from the inception of this case.  We admitted he is a crack cocaine addict...Woodard's intent was to sit there and smoke every last bit of that.  That was his intent."

2

to withdraw was granted.[2]  At that hearing, Woodard indicated that he desired to proceed *pro se* and,

after a lengthy colloquy to assure the Court that Woodard knowingly and willingly waived his right

to representation, the court permitted him to proceed *pro se* with the assistance of stand-by counsel,

Attorney Mark Thoma ("Thoma"). [DE's 69, 72, 73].

Thereafter, Woodard filed the following pre-sentencing motions/communications: (1) Motion

to Vacate Conviction and Dismiss Indictment [DE 71][3]; (2) Motion for Production of Grand Jury

Transcripts [DE 74][4]; (3) Letter Requesting a Copy of  Bill of Particulars [DE 78][5]; (4) Motion to

Produce Transcript [DE 80][6]; (5) Motion for Court Order Directing Defense Counsel to Provide File

to Defendant [DE 81][7]; (6) Motion for Access to the Court and Essentials [DE 82][8]; (7) Motion to

Withdraw Judge Lee [DE 83][9]; (8) Objection to Presentence Investigation Report [DE 87][10]; (9)

Motion for Judge to Reconsider Voluntary Withdrawal [DE 88][11]; (10) Motion to Compel the

Production of Evidence, Disclosure of Full Discovery and Preferential Agreement with CI [DE

---

[2]The court ordered Swanson to file a sentencing brief related to the sentencing issues previously raised and indicated that once the brief was filed, Swanson's motion to withdraw would be granted.

[3]Denied by Docket Entry 113.

[4]Denied by Docket Entry 101.

[5]See Docket Entry 78, indicating that no Bill of Particulars has been docketed in the case.

[6]Granted by Docket Entry 86.

[7]Granted by Docket Entry 86.

[8]Denied by Docket Entry 86.

[9]Denied by Docket Entry 85.

[10]Denied by Docket Entry 113.

[11]Denied by Docket Entry 91.

100][12]; (11) Letter of Complaint re: stand-by counsel [DE 106][13];(12) Motion for Production of

Testimony of Miguel Rivera and Keith Malone and In Camera Inspection of the Proceedings Before

the Grand Jury [DE 109][14]; and (13) Objection to Revised Presentence Investigation Report [DE

117].[15] There were also several motions for extension, all of which were granted by the undersigned.

After resolution of the aforementioned motions, Woodard appeared for sentencing and was

sentenced to 210 months, based on this Court's conclusions, outlined in two separate sentencing

orders, that two prior burglary convictions qualified Woodard as a career criminal offender pursuant

to U.S.S.G. §4B1.1.  The Court also found that Woodard did not qualify for a two-level reduction for

acceptance of responsibility based upon his "offer" to plead guilty to a lesser included offense.  The

sentence of 210 months constituted the low-end of the applicable guideline range.

At sentencing, Woodard requested the Clerk to file a notice of appeal on his behalf and orally

motioned for the appointment of non-local counsel for his appeal.  This request was submitted along

with Woodard's Notice of Appeal to the Seventh Circuit Court of Appeals. [DE 129]. The Court of

Appeals then appointed Attorney Karen Tinglin ("Tinglin") for the appeal.

After Tinglin filed Woodard's appellant brief, Woodard filed a *pro se* motion for the

appointment of new counsel and to stay his appeal until new counsel was appointed. The Seventh

Circuit denied this request.[16]

---

[12]Denied by Docket Entry 126.

[13]Minute Entry, Docket Entry 107, showing issues resolved.

[14]Denied by Docket Entry 112.

[15]Denied by Docket Entry 123.

[16]Tinglin responded to Woodard's motion by stating:

In his appeal, Woodard opted not to appeal his conviction or his classification as a career offender, see *United States v. Woodard*, 408 F.3d 396, 397-99 (7th Cir. 2006) ("Woodard does not contest his latest conviction or the classification of his older convictions as crimes of violence but contends that his sentence is too high nonetheless.").  Rather, Woodard challenged the denial of a two-point reduction for acceptance of responsibility, argued that his criminal history category significantly overstated the seriousness of his criminal history, and contended that the undersigned violated his Sixth Amendment rights by treating him as culpable for about 12 grams of crack under the Guidelines' relevant conduct rules instead of the smaller amount  supported by the jury's verdict. The Seventh Circuit concluded that "the district judge respected all of Woodard's constitutional rights when imposing sentence" and ordered a limited remand under the terms of *United States v. Paladino,* 401 F.3d 471, 483-84 (7th Cir. 2005) so the undersigned could determine whether he would have imposed a lower sentence had he anticipated the additional discretion afforded by *Booker*. *Woodard,* 408 F.3d at 399.[17]

<div style="margin-left:2em">

Karen E. Tinglin has effectively carried out her duties as court appointed counsel...and in doing such, duly filed a brief on his behalf, including issues that he indicated were of concern to him, specifically, whether the district court improperly considered an additional 11.71 grams of crack cocaine as relevant conduct pertaining  to his base offense level in sentencing thereby violating the rule set forth in Blakely and whether the district court erred in failing to assert a downward departure in defendant's sentencing.  The brief was timely filed and sent to the Defendant...and an additional copy of the brief was sent to Defendant...Court appointed counsel ...is not a part of a conspiracy to hinder or deny Defendant his direct appeal.

</div>

[17]The Court of Appeals found that Woodard was not entitled to an acceptance of responsibility reduction because "instead of admitting what he did, Woodard denied doing anything wrong...Woodard did not need to deny the obvious; [he had been caught red-handed with .6 grams of crack while meeting with a would be customer] instead he sought a windfall acquittal." *Woodard,* 408 F.3d at 398.  In addition, the Court found that no 6th Amendment violation had occurred relating to relevant conduct since Woodard's offense level was determined by the career offender provision and not the drug amount

On remand, the undersigned, mindful of the Seventh Circuit's closing admonition that "nothing in *Booker* affects the career offender rules, which pose legal rather than factual issues for the sentencing judge," *Woodard,* 408 F.3d at 398,  set the matter for hearing and ordered counsel to file position statements as to the sentencing.  The undersigned then entered an Order [DE 151] concluding that despite the advisory nature of the Guidelines, the sentence would remain unchanged. As noted previously, the Seventh Circuit affirmed the sentence.  Woodard sought to recall the mandate and also sought a writ of certiorari which was denied, 127 S.Ct. 242 (2006).  Woodard has now filed the present petition to vacate his sentence.

## DISCUSSION

Under the terms of § 2255, a petitioner in federal custody may challenge the validity of his confinement "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255. However, relief under § 2255 "is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996).

Woodard raises two grounds in his § 2255 petition including (1) ineffective assistance of counsel from all four of his attorneys and (2) a challenge to the district court's application of the career criminal enhancement.  Each of these arguments shall be addressed in turn.

## I.      Ineffective Assistance of Counsel

Turning first to the claims of ineffective assistance of counsel, these claims are Sixth Amendment challenges and assessed under the familiar *Strickland v. Washington*, 466 U.S. 668

---

calculation.

(1984) standard.  Under *Strickland,* to establish that he was deprived of his right to effective counsel, Woodard must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that he was prejudiced because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695. To establish ineffective assistance of counsel at a sentencing hearing, Woodard must be able to show that his attorney "performed in a deficient manner at the hearing, and then prove 'that but for his counsel's unprofessional error, there is a reasonable probability that the results [of his sentencing hearing] would have been different.' " *Fuller v. United States,* 398 F.3d 644, 650 (7th Cir.2005) (quoting *Berkey v. United States,* 318 F.3d 768, 774 (7th Cir.2003)).  The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690.  As will be set forth below, Woodard is unable to establish either attorney error or that any alleged errors by any of his counsel prejudiced the result of his proceedings.

### A.  Attorney O'Malley and Attorney Swanson

Woodard's primary complaints relate to various decisions made by his two trial counsel.  For instance, Woodard asserts that both O'Malley and Swanson erred by failing to advise Woodard of the possibility that if convicted he would qualify as a career criminal and receive an enhanced sentence.  Similarly, he asserts that both counsel failed to pursue pretrial motions, failed to obtain, evaluate, and seek all discovery; and, particular to Swanson, that he did not utilize an appropriate defense strategy.  Finally, with respect to O'Malley, Woodard contends that he engaged in a conspiracy with the Government's chief prosecuting witness and the Assistant United States Attorney.

The majority of these assertions above are easily resolved against Woodard.  First, Woodard was advised by way of the Notice of Penalties filed in his case that his sentencing exposure  could be as high as 40 years for the charged offense and 20 years for a lesser offense.  Further, even if O'Malley and Swanson, as Woodard contends, *should have* had some knowledge that he may qualify for the career offender enhancement and *should have* communicated it to Woodard, it matters little since Woodard was not prejudiced from presenting any objections to the enhancement.  He still presented his objections to the enhancement and argued its constitutionality before the undersigned.

Interestingly, however, Woodard attempts to show prejudice by asserting that if he had known that he would qualify for a career criminal enhancement, he would have pled guilty rather than go to trial. *See Defendant's Memorandum in Support, at pp. 19-20.*[18]  Whether Woodard would have pled guilty rather than move forward with trial however, makes not a wit of difference to his classification as a career criminal.  Any conviction for the charged offense (or any lesser included offense that qualified as a controlled substance offense), be it by a negotiated plea or by a jury's finding, would have made applicable the career criminal enhancement since Woodard had two previous burglary convictions.[19]

---

[18]Another problem for Woodard is that the record is absolutely clear that Woodard rejected the plea agreement offered by the Government because it required him to admit guilt to more than five grams of crack cocaine. Woodard also repeatedly indicated that he would plead to possession with intent to distribute less than five grams of crack cocaine if the Government offered such a plea.  The Government refused and Woodard, rather than plead without the benefit of an agreement to the underlying offense of possession with intent to distribute and save the quantity determination to the jury, opted for an all or nothing approach.  In hindsight, this was not a bad idea; had Woodard pled to either of these offenses, he would not have avoided the career criminal enhancement since he would have been pleading guilty to a controlled substance offense greater than simple possession.

[19]Elsewhere and on appeal, Woodard claimed that he should have received a reduction for acceptance of responsibility.  Regardless of whether Woodard received an acceptance of responsibility reduction the career criminal enhancement bumped his offense level to a level 32.  In fact, had Woodard been convicted of the charged offense rather than the lesser included, his offense level would have

8

Moreover, as the Government points out, Swanson provided Woodard with the best opportunity to avoid the career criminal enhancement by virtue of the defense strategy he employed. The career criminal enhancement only applies if the conviction for the present offense is either a crime of violence or a controlled substance offense. Section 4B1.2(b) defines controlled substance offense to mean a drug trafficking offense, not a drug possession offense. Before the jury, Swanson utilized the lesser weight of drugs that Woodard conceded he possessed (an amount less than five grams) to support the argument that Woodard was a drug addict rather than a drug dealer and therefore, should not be convicted of a drug trafficking offense at all but of simple possession. Unfortunately for Woodard, the jury concluded that the lesser amount was not only possessed but it was possessed with the intent to distribute it. Other than an outright acquittal, this strategy employed by defense counsel was the only way in which Woodard could have avoided the career criminal enhancement provision. Accordingly, Woodard has not shown either attorney error by counsel's alleged failure to inform him of the possibility of being sentenced as a career criminal or prejudice from the alleged error.

As for the conduct of discovery and the filing of motions, the docket reflects that O'Malley filed a pretrial Motion to Suppress as did Swanson, neither of which were successful. Further, the Government has produced exhibits attached to its Response demonstrating that O'Malley undertook reasonable efforts to obtain discovery. (Response, Exhs. A and B). The docket also reflects that O'Malley filed a "Motion to Clarify Discovery Issues" wherein he addressed seven issues brought to his attention by Woodard. The docket demonstrates additionally that a copy of a tape recorded conversation between Woodard and the confidential informant in the case was not only sought by

_____

increased to a level 34 qualifying him for an even longer sentence.

9

O'Malley but provided to him in open court.  (8/05/2002 Hearing Transcript at p. 18).  Simply put,

Woodard has set forth not one specific act or omission in the pretrial phase of his case that would lead

to a conclusion of ineffective assistance of counsel on these grounds.  *United States v. Moya-Gomez*,

860 F.2d 706, 763-64 (7th Cir.1988) ("the defendant must identify the specific acts or omissions of

counsel that formed the basis for his claim of ineffective assistance.").

Next, Woodard argues that O'Malley conspired against him with Government witnesses and

the AUSA.  This argument simply has no foundation in fact and Woodard has provided nothing more

than speculation that any sort of conspiratorial conduct occurred.  For instance, Woodard points  to

a statement by the Assistant United States Attorney that, "after one of the hearings in this case, Mr.

O'Malley went with Detective Rivera.  They actually went to the hotel and I think they obtained the

most recent address [for Mr. Malone, the confidential informant]."  (8/1/02 Hearing Tr. At p. 4).

Woodard then speculates that Detective Rivera was utilized by O'Malley as a private investigator and

that this was a conflict of interest since Detective Rivera was a government agent.  Aside from this

rampant speculation, there is no evidence from which this Court could possibly concur that O'Malley

engaged in any impropriety that would have compromised Woodard's own interests.

Finally, Woodard asserts that Swanson erred by not arguing an entrapment defense.

Generally, counsel's strategic decisions to present a particular defense or refrain from adopting a

particular line of defense are given considerable deference.  Indeed, "strategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;

and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." *Strickland,*

466 U.S. at 690-91. Thus, to prevail on this argument Woodard has to overcome the presumption that,

10

under the circumstances, the challenged action was sound defense strategy. *See Raygoza v. Hulick,*

474 F.3d 958, 962 (7th Cir. 2007).

In this case, it is undisputed that Woodard discussed the entrapment defense with Swanson

in pretrial letters to him and the issue was raised by Woodard in open court. Indeed, the record

demonstrates that Swanson was well aware that Woodard did, in fact, request him to utilize an

entrapment defense.  See Trial Tr. Volume II, pp. 149-150. Yet, after reviewing the case, Swanson

determined that the defense was not the best strategy for Woodard.  Furthermore, Swanson was well

aware that Woodard questioned his professional judgment and thus, during trial he made the

following statement:

> I would like to make a brief record on the defense of entrapment that I had
> considered...I had considered entrapment because of the single transaction
> orientation in this case.  However, my client indicated to me all along that he was
> the author of 7/10s of the gram, but he did not have the more weighty substance, let's
> say nine grams, what have you.  I explained to him that entrapment is a confession
> of wait and see.  I am guilty, wait and see, and I am guilty.  And accordingly, I
> decided not to use entrapment.  The second reason I decided not to use entrapment
> was strategic, because I felt I could proceed good enough – enoung on this direction
> on Malone to satisfy the jury's appetite for a conviction . . .But those are reasonable
> things and I struggled with it, and that's why I did it.

Trial Tr. Vol. II, pp. 149-150.

On this record, Woodard has not overcome the presumption that Swanson's actions were part

of a reasonable trial strategy, let alone that Swanson's performance was outside the range of

professionally competent assistance and denied him a fair trial. Accordingly, the court rejects the

argument that Swanson rendered ineffective assistance by not asserting an entrapment defense.

## Attorney Thoma

Next, Woodard argues that his stand-by counsel was ineffective for failing to present a

11

sentencing issue to the Court, i.e., that Woodard did not receive an acceptance of responsibility reduction.  Whether Woodard can even assert an ineffective assistance against stand-by counsel is suspect since a defendant, as Woodard did here, may waive this Sixth Amendment right to counsel and instead choose to represent himself during criminal proceedings. *Faretta v. California,* 422 U.S. 806, 836 (1975). In such a case, the trial court, as the undersigned did here, may appoint standby counsel to assist the *pro se* defendant. *Id.* at 834 n. 46. There is, however, "no constitutional right to hybrid representation," where the defendant "share[s] the duties of conducting the duties of conducting [his or] her defense with a lawyer." *United States v. Schmidt,* 105 F.3d 82, 90 (2d. Cir.1997) (citing *McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984)), *cert. denied,* 522 U.S. 846 (1997). And "without a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel." *United States v. Morrison,* 153 F.3d 34, 55 (2d Cir.1998) (citing *Schmidt,* 105 F.3d at 90).[20]

In this case, Woodard waived his right to counsel and exercised his right to self-representation. Although his standby counsel may have played some limited role in providing Woodard advice and occasionally speaking to the Court on his behalf on discrete issues, it was

---

[20] At least one court has articulated the expectations of stand-by counsel in this way:

> As might be expected, a standby counsel's duties are considerably more limited than the obligations of retained or appointed counsel. Thus, even where standby counsel plays a role in the trial, such as by examining witnesses and/or delivering the defense summation, such counsel will typically "not play the same role that defense counsel normally would in preparing the strategy for a criminal defense. Where a defendant elects to proceed *pro se,* he may not assign blame for [his] conviction to standby counsel.  Only where "standby counsel [holds] that title in name only and, in fact, act[s] as the defendant's lawyer throughout the proceedings, can a defendant arguably be entitled to press a claim for ineffective assistance of that counsel.

*Van Stuyvesant v. Conway,* 2007 WL 2584775, *26(S.D.N.Y.,2007).

12

Woodard himself who largely conducted his representation, as is evidenced by the sheer number of Woodard's post-trial motions. Woodard's standby counsel certainly did not hold the title of "stand-by" counsel "in name only," (see Footnote 20) and thus Woodard may not now assign blame for his sentence to such counsel.

Perhaps even more importantly, even if Woodard could make a claim against his stand-by counsel for an alleged failure to bring to the court's attention the denial of acceptance of responsibility, it is abundantly clear that the issue was not only presented to the undersigned but considered thoroughly in an Opinion and Order entered by this court on May 20, 2004 [DE 123 at p. 6] and the argument was rejected by the Seventh Circuit on appeal. Again then, Woodard has not demonstrated deficient performance or prejudice from the alleged deficiency.

## Attorney Tinglin

Finally, Woodard contends that his appellate counsel did not present certain arguments on appeal that he specifically requested that she raise, counsel did not accept his telephone calls or acknowledge his letters, and counsel failed to advise him of the limited *Paladino* remand.

With respect to the arguments to be made on appeal, Woodard contends, for instance, that Tinglin did not raise any appellate argument as to application of the career offender provision and, in particular, to the classification of his two burglary convictions as crimes of violence under that provision. Again, however, these arguments are insufficient to demonstrate ineffective assistance of counsel. Indeed, to the extent Woodard claims ineffective assistance simply due to appellate counsel's failure to raise issues he desired to have raised, his claim is without merit. The constitution does not require appellate counsel to raise every nonfrivolous issue requested by appellant. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1983). Secondly, it is evident from

13

Attorney Tinglin's response that to Woodard's request for appointment of new appellate counsel that she considered the arguments and suggestions of Woodard, filed a competent brief on the issues she believed were most pertinent, and communicated with Woodard by sending him copies of the briefs filed in his cause. Obviously, Woodard would have preferred that counsel personally respond to every telephone call and to every letter he sent. However, from the record it is clear that appellate counsel filed appropriate briefs in Woodard's appeal, participated in oral argument on his behalf and ultimately was successful in achieving the limited remand.[21]

Finally, Woodard objects to not being notified of the limited *Paladino* remand so that he could file a reply in the district court. However, Woodard was represented by counsel who is the only person authorized to make filings on his behalf.[22] Appellate counsel did so on his behalf. And, he can show no prejudice as it is clear that Woodard received (once again) the low-end of the guidelines which was in compliance with the Seventh Circuit's caution that "when making [the resentencing decision], the judge should bear in mind that *Booker* does not affect §944(h), which calls for career offenders to be sentenced at or near the statutory maximum." *Woodard,* 408 F.3d at 399. Thus, Woodard has shown neither error or prejudice from the alleged errors of appellate counsel.

II.    Career Criminal Enhancement

In his second ground for relief, Woodard argues that his Fifth and Sixth Amendment rights were violated by application of the career offender provision to his case. More specifically,

---

[21]On at least one occasion, Tinglin represented that she had considered his correspondence and discussed it with his family members to attempt to incorporate his concerns.

[22]Woodard was well-aware of this rule as the undersigned had stricken some of his attempted filings in the district court since at the time of the attempted filing he was represented by counsel.

14

Woodard asserts that the court violated his right to a jury trial by enhancing his sentence based upon

factual allegations (the two prior burglary convictions) not charged in the indictment and not proven

beyond a reasonable doubt.

Woodard's argument, as the Government points out, fails on several fronts.  First, Woodard

did not raise this issue on appeal and therefore, he is barred from raising it now.  *See Barker v.*

*United States,* 7 F.3d 629, 632 (7th Cir.1993) (issues not raised on direct appeal are waived unless

the defendant establishes cause for the procedural default and prejudice).[23]

Moreover, even if he was not barred from raising the issue presently, his argument does not

win the day.  Recently in *United States v. Brown,* the Seventh Circuit addressed the identical

argument made by Woodard and concluded that the argument was frivolous in cases where the

statutory maximum was not exceeded by the sentence imposed:

> Prior to sentencing, Brown objected to his classification as a career offender on the
> grounds that his relevant prior convictions were not charged in the indictment,
> proved to a trier of fact beyond a reasonable doubt, or admitted in his guilty pleas,
> and therefore they could not operate to increase his guidelines range without
> violating his rights under the Fifth and Sixth Amendments. ...a  judge may find the
> fact of a prior conviction when applying the guidelines, and prior convictions need
> not be found beyond a reasonable doubt for sentencing purposes. *Booker,* 543 U.S.
> at 243-44; *Almendarez-Torres v. United States,* 523 U.S. 224, 239-47, 118 S.Ct.
> 1219, 140 L.Ed.2d 350 (1998); *United States v. Spence,* 450 F.3d 691, 696-97 (7th
> Cir.2006); *United States v. Bryant,* 420 F.3d 652, 656 (7th Cir.2005); *United States
> v. Washington,* 417 F.3d 780, 788 (7th Cir.2005). The constitutional problem that
> counsel identifies arises only "if judicial factfinding [other than the fact of a prior
> conviction] results in a sentence exceeding the statutory maximum, for example, or
> if such factfinding requires a particular sentence in the context of a mandatory
> sentencing guidelines scheme." *Bryant,* 420 F.3d at 656; *see Booker,* 543 U.S. at 244

---

[23]The Court acknowledges that Woodard contends that the failure to raise the argument on appeal
constituted ineffective assistance of appellate counsel.  However, even if this argument prevailed, he
would still have to overcome the large line of precedent which, as described herein, demonstrates that the
Sixth Amendment is not violated by the circumstances of his case.

15

("Any fact *(other than a prior conviction)* which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.") (emphasis added). Counsel is correct that any argument to the contrary would be frivolous.

*United States v. Brown*, 2007 WL 3374802, *2 (7th Cir. ,2007).

In this case, the statutory maximum for the offense of conviction was 20 years, the equivalent of 240 months. Woodard's sentence was 210 months. Woodard's classification as a career offender resulted from prior convictions which *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), held are exempt from the rule that facts serving to increase a statutory maximum must be admitted or proved to a jury beyond a reasonable doubt. There was no other judicial factfinding in this case and thus, the career offender application did not result in a sentence higher than the statutory maximum so as to compromise the Sixth Amendment. *See, e.g., United States v. Washington,* 417 F.3d 780, 788 (7th Cir.2005); *United States v. Pittman,* 418 F.3d 704, 709 (7th Cir.2005). Accordingly, Woodard's second ground for relief fails

## CONCLUSION

Based on the foregoing, Woodard's petition pursuant to 28 U.S.C. §2255 is DENIED.

Entered: February 22, 2008.

s/ William C. Lee
United States District Court